ALFRED WOODWARD *v.* CORNELIUS WOODWARD and others.

A., being about to be married, after the death of his wife, procured a deed of bargain and sale, for a money consideration of $400, to be drawn, conveying his homestead farm to a grandson, and signed his name to the deed before witnesses, concealing from them the nature of the instrument- On A.'s death, after the lapse of fifteen years, the grandson having lived with him from before his second marriage until his death, the deed was found, by the administrators of his estate, in the desk in which he had kept his papers. The grandson filed a bill, praying possession of the farm and title deeds. There was no evidence of any actual delivery of the deed, or of the payment of any part of the consideration money mentioned therein,

The Court said it was a question of delivery, proper to be tried at law; and dismissed the bill.

The bill, filed Sept. 27, 1847, states that Anthony Woodward, deceased, was, in his lifetime, seized and in possession of a certain farm in upper Freehold, Monmouth county. That he had intermarried with Keziah Cowperthwaite, in or about the year 1785, by whom he had one child, James Woodward, the father of the complainant and one of the defendants. That the said James Woodward was born in or about 1786, and subsequently inter - married with Lydia Bullock, by whom he had two children, to wit, the complainant, and a daughter, since deceased. That in or about 1811, when the complainant was about four years old, he was taken by his said grandfather to be brought up as his own child; that he, at that early day, left his father's house, and removed to the house of his grandfather, on the farm hereinafter referred to, and continued to live with his said grandfather up to the time of his death, on the 9th of May, 1840. That during all this time, the complainant was treated as a son by his grand father; and was supported and educated by him exclusively.

That in February, 1822, Keziah, the wife of said Anthony Woodward, and the grandmother of the complainant, died. That subsequently, on or about August 23, 1825, the said Anthony Woodward, then being of the age of about sixty-four years, intermarried, as the complainant is informed and believes, with one Caroline Wilbur, one of the defendants in this suit. That said Caroline had been, and was a hired domestic in the family

of the said Anthony Woodward, and, while there, became pregnant, as was said, by the said Anthony. That under these circumstances, urged by the earnest solicitations of the said Caroline, to save her from disgrace, he consented, after much hesitation, to marry her, and, on or about August 23, 1825, the day preceding the birth of the child of the said Caroline, they were privately married.

That, on the 19th of August, 1825, about four days prior to said marriage, the said Anthony Woodward made and executed a deed of bargain and sale to the complainant, for all that farm on which he then lived, situate in Upper Freehold, Monmouth county, bounded as follows : (giving the boundaries) containing 166 acres, be the same more or less, excepting a small piece that was quit-claimed to Michael Mount, next to said Mount, to make the line straight : To have and to hold to the complainant, his heirs and assigns for ever ; which said deed contained full covenants of seizure and warranty against all incumbrances. That the said deed, with the attesting clause and the words, " signed, sealed and delivered in the presence of " are all in the handwriting of the said Anthony Woodward. That, after the same had been so prepared by him, it was by him executed and acknowledged to be his act and deed in the presence of Joseph S. Smith and Isaac N. Woodward, the subscribing witnesses. That the execution of said deed was at a store some short distance from the residence of the said Anthony ; to which store the said Anthony had gone to procure witnesses who were young men, and would, as he said, be likely to live, in whose presence the same could be executed. That at the time of the execution of said deed the complainant was not present ; but that immediately thereafter, to wit, on the next day or the day following, he the said Anthony took the complainant into a furnace house near his dwelling, and then and there explained to him his intention to marry the said Caroline ; but assured him that his said marriage should not impoverish his estate ; and, to secure the complainant in the ultimate possession and ownership of said farm, which he had always promised and intended he should have, he then and there read and delivered to the complainant, by handing the same over to him, the said deed for said farm. That the complainant al-

ways supposed that the settlement so made upon him was full and complete, and not revocable by the said Anthony; but, inasmuch as the complainant was a minor, a part of the time away from home at boarding school, and when at home had no place to keep valuable papers, and had entire confidence in his said grandfather, to whom he was attached as to a parent, he handed the said deed back to him for safe keeping; and he the said Anthony did then and there assure the complainant that he would take charge of and keep the said deed safely for the complainant as aforesaid. That the said Anthony did take the said deed for safe keeping; and the same continued in his custody up to and at the time of his death, on the 9th of May, 1840. That soon after his death, to wit, on or about August 30, 1840, and while the appraisers and administrators of his personal estate were present, the said deed was discovered in a private place in his desk; and immediately thereupon, and before it had been opened, it was recognized and pronounced by the complainant to be his deed for the property in question. That he immediately requested that Caroline, the widow of said Anthony, should be called in and the deed read, which was done accordingly; and the complainant thereupon resumed the possession thereof, and had the same placed on the records of the said county.

That, although said deed was delivered to the complainant without condition or limitation, the complainant permitted the said Anthony to continue in the occupancy and enjoyment of said farm, as he had been prior thereto; he the said Anthony continuing to support and maintain the complainant as aforesaid. That at the death of the said Anthony, his widow, the said Caroline, with her children born since the marriage, to wit, Keziah, Elizabeth, Hannah Ann, William and Anthony, continued to reside upon said property; and upon demand being made, since the death of the said Anthony, have refused to yield up the possession thereof, or in any shape to recognize the rights of the complainant, insisting that the property belongs to the heirs of the said Anthony. That those children are all minors, as the complainant is informed and believes, except Keziah, who came of age on the 15th instant.

That the said Anthony Woodward died intestate, and without

having ever attempted to make or cancel the settlement made upon the complainant as aforesaid. That he, after the execution thereof, and up to within a few years of his death, repeatedly acknowledged the existence and validity of said deed of settlement. That the existence thereof was known in the family of the said Anthony, and to other branches of the family; and, more particularly, was it known and acted upon by Joseph and Lydia Bullock, the maternal grandfather and grandmother of the complainant, who, upon distributing their estates by will, cut off the complainant from his share thereof, upon the express ground that the complainant was sufficiently provided for by the settlement made upon him by his grandfather as before mentioned.

That after the marriage of the said Anthony with the said Caroline the said Anthony expended large sums of money in the support and maintenance of the poor relatives of the said Caroline; that her entire family were in destitute circumstances, and became, either in whole or in part, a charge upon the said Anthony from that time up to the day of his death. That the said Anthony, at the time of his death, was seized and possessed of considerable estate, real and personal, besides the farm before mentioned, which said estate descended to the children of the said Anthony, subject to the widow's right of dower therein. That the said Caroline, widow as aforesaid, retains possession of the original title papers of the said Anthony to the said farm; that they have never been placed on the public records of the county of Monmouth, or elsewhere, to the knowledge of the complainant; and the same are essential, as the complainant is advised, to making out a proper documentary title to said premises.

The bill prays that the defendants may be decreed to deliver up to the complainant the possession of the said farm, free from all incumbrances placed upon it by them or either of them, and all the title deeds and muniments belonging or relating to said farm in the possession of them or either of them; and may be decreed to account with the complainant, and to pay him a fair and reasonable sum as rent for the use and occupation of said farm since the death of the said Anthony Woodward, with such other allowance as may be reasonable and just, and for such further and other relief, &c.

Subpœna is prayed against Caroline Woodward, Keziah, Elizabeth, Hannah Ann, William and Anthony Woodward, and James Woodward.

Caroline Woodward, the widow, Keziah, her daughter, who is of age, and Elizabeth Woodward, Hannah Ann Woodward, William and Anthony Woodward, infant children of said Caroline, by said Caroline, their guardian, put in their joint and several answer.

They admit that Anthony Woodward, deceased, died seized and possessed of the farm described in the bill. That said Anthony, deceased, by his first wife, Keziah, had one child, James Woodward, the father of the complainant, and a defendant in the bill. That said James Woodward married one Lydia Bullock, who is still living, by whom he had two children, the complainant and a daughter, since deceased.

The defendants aver, that the said James Woodward and his said wife, shortly parted and broke up housekeeping; and then, when complainant was about four years old, he was taken by his grandfather as one of his family; but that for several years he was living in Pennsylvania, and out West.

The defendant Caroline says, that the time of her marriage with said Anthony Woodward, deceased, is correctly stated in the bill; and she admits that previous to the day of the marriage she for a long time lived as one of the family of her said late husband, having commenced to do so at his urgent solicitation, and kept house for him until he made proposals of marriage to her, which resulted in a mariage and she became his wife; but she denies that her said late husband was urged to the said marriage by her urgent solicitations; and declares that the same was in pursuance of a contract of marriage fairly, honorably, freely and mutually entered into by and between the said Anthony and her, something over a year before the said marriage was solemnized.

She denies that the said marriage was private, or kept private or secret, or intended to be in any way a privacy, either by her or the said Anthony.

She denies that while a member of the family of the said An-

thony she was ever a hired domestic in such a sense as would imply any impropriety in the making and consummating a contract of marriage between them ; and she denies the imputation, if any such is intended by the wording of said bill, of having improperly induced the said marriage.

The defendants deny that the deed stated in the bill as made and executed by said Anthony Woodward to the complainant, on the 19th of August, 1825, was ever made and executed and delivered by said Anthony Woodward to the complainant. They admit it was prepared by said Anthony Woodward, and by him executed so far as to sign it, and that he acknowledged it to the witnesses to be his act and deed ; but they deny that he delivered said deed ; and on the contrary declare that the said Anthony Woodward did not then or at any time afterwards deliver said deed to the complainant.

They admit that when the witnesses signed said deed and the said Anthony Woodward executed it so far as to put his name to it, and which the defendants say was the only execution of it that ever took place, the defendant was not present ; but they deny that immediately thereafter, to wit, on the next or the day following, or at any other time, the said Anthony Woodward took the complainant into a furnace house near his dwelling, or to any other place, and then, or at any other time, and there, or elsewhere, explained to the complainant his the said Anthony Woodward's intention to marry the said Caroline. And they deny that at the time or place stated in the bill, or at any other time and place, the said Anthony Woodward assured the complainant that his said marriage should not impoverish his estate. They deny that at that or any other time or place the said Anthony Woodward, to secure the complainant in the ultimate possession and ownership of said farm, or for any other purpose or object whatever, read and delivered, or either read or delivered, to the complainant, by handing the same over to him, or in any other way, the said deed for said farm, and they deny that said deed was then and there, or at any other time or place, either read or delivered by said Anthony Woodward to the complainant, or handed over to the complainant by the said Anthony Woodward. They deny that said Anthony

Woodward had always promised and intended that the complainant should have said farm ; and deny that any settlement was ever made upon the complainant by said Anthony Woodward. They deny that the complainant handed the said deed back to said Anthony Woodward for safe keeping, at the time and place mentioned in the bill or at any other time or place ; and deny that the complainant ever handed said deed to said Anthony at all, and deny that he ever had said deed in the lifetime of said Anthony Woodward, or that it was ever in his possession during the lifetime of said Anthony Woodward, or in the possession of any other person for the complainant or his use ; and deny that the said Anthony Woodward did at the time and place in the bill mentioned, or any other time or place, assure the complainant that he would take care of and keep said deed safely for the complainant ; they deny that said Anthony Woodward ever had said deed in his charge and keeping for the complainant, or ever undertook to keep it for the complainant, or that it ever belonged to the complainant, or was ever held by said Anthony Woodward in any way for the complainant.   They deny that said Anthony Woodward did take said deed for safe keeping for the complainant, or that he took it from the complainant at all, or that he ever had it in safe keeping for the complainant.

They admit that said deed was in the custody of said Anthony Woodward, and that it continued in his custody up to and at the time of his death, on the 9th of May, 1840 ; but they deny that such custody was for or on behalf of the complainant, or that said deed belonged to the complainant, or that the complainant had placed it in his custody.   They aver that, from the time said deed was signed by the subscribing witnesses, it remained in the custody of said Anthony Woodward as his own, and not as belonging to the complainant or any other person ; and they deny that said Anthony Woodward in his lifetime ever delivered said deed to the complainant in the furnace or elsewhere ; and deny the truth of any such interview between said Anthony Woodward and the complainant as is stated in the bill ; and they deny the truth of the circumstances set forth in the bill describing the reading and handing over said deed, or the delivery of said deed by said Anthony Woodward to the complainant and

the handing the same back by the complainant to said Anthony Woodward for safe keeping; and they deny that said deed has ever been in any way delivered to the complainant, or that there has ever been in fact or in law a delivery of said deed.

The defendants admit that Anthony Woodward died May 9th, 1840, and that his administrators, about the 29th of May, 1840, with appraisers, took, or were engaged in taking an inventory or appraisement of the personal estate. That, while thus engaged, and, the defendants aver, while the administrators and appraisers were examining the contents of the desk of the deceased, the said deed was found, with some other papers of no importance, in one of several secret and concealed pigeon holes or small boxes in the back part of said desk, and back of a portion of the inside of the writing desk, which portion it was discovered could be drawn out, and in one of which said boxes, as said portion was drawn out, said deed was found; and thereupon the said deed was picked up by the complainant, who looked at it long enough to read some of it, and pronounced it to be a deed to him, and handed it to one standing by to read; and said Caroline Woodward was requested to come into the room where they were, at the mansion house of said deceased on the premises aforesaid, and the paper thus found was read over in her presence, and purported to be a deed from said Anthony Woodward, deceased, to the complainant, for said premises, and purported to bear date previous to the marriage of said Anthony Woodward to the said Caroline.

And the defendant Caroline Woodward says, that this reading of said deed was the first time she ever heard of any such deed or knew that there was in being any such paper. And the defendants say that they had never before heard or known of any such deed, or of the existence of any such paper.

The defendants say, that after said deed was read over aloud, and as the same was about being laid down, the complainant quickly thrust out his hand and seized the said deed, and immediately doubled up the same and put it in his pocket, all which was done by the complainant quickly and fraudulently and forcibly, and without the consent of these defendants, and to the surprise and astonishment of the said Caroline Woodward. And

thereupon the complainant being remonstrated with, and told that he had no right to the deed, the complainant then stated that the deed had never been delivered to him, and, on being asked if he had ever paid the consideration or any thing for the property, he said he had not; his grandfather, he said, was going to give it to him, and he refused to give up the deed, and then and there fraudulently, craftily, and forcibly, and against the consent or authority of these defendants, or any of them, took and retained possession of said deed.

They deny that the complainant recognized and pronounced the said deed to be his, when found as aforesaid, until after he had time to read a portion of it.   They say that the complainant, on being told to deliver up said deed, on such demand being made, refused to do so.   They deny that the complainant ever had possession of said deed before, or that it is true that at the time, in seizing said deed, he resumed possession of it, as stated in the bill.

They admit that complainant, in July, 1841, had said deed put on record, having first, in June, 1840, got one Joseph S. Smith to testify to the said Anthony Woodward's placing his name to the same in his, said Smith's presence, the said Anthony Woodward having never acknowledged said deed in his lifetime.

They admit that Anthony Woodward, deceased, remained in possession of said farm from the date of said deed, to wit, August 19th, 1825, until his death, on the 9th of May, 1840, and that his possession during that time was the same as it had been previous to August 19th, 1825; which possession they aver to have been by said Anthony Woodward in his own right as owner in fee.   And during said time the said Anthony Woodward rented out to different tenants portions of said premises, and received the profits thereof; and he farmed the said premises in all respect as he had always done, as the sole owner and occupier in his own right; and the complainant was never consulted in reference to the possession or farming the place by his grandfather, or admitted by his grandfather to be the owner ; but the said Anthony Woodward always represented himself to be in possession as the owner, and frequently spoke of the interest that he declared his children, these defendants, would have in the said

premises on which he lived, after he was done with it. They deny the statement in the bill that the complainant permitted the said Anthony Woodward to remain there to be true; and, while they admit that said Anthony Woodward did a great deal towards the support and maintenance of the complainant, yet they deny that it was in any manner as a rent, compensation or consideration for the occupancy of said premises; and they deny that there ever was any tenancy existing between said Anthony Woodward as tenant and the complainant as landlord; and they deny that Anthony Woodward ever admitted any such tenancy to exist; but they aver that, during all said time, and up to his death, the said Anthony Woodward held said premises adversely to the complainant. They admit that since the death of Anthony Woodward these defendants have remained in possession of said mansion house and the plantation thereto belonging, of which Anthony Woodward died seized; and that these defendants and said James Woodward, the father of the complainant, are the widow and heirs-at-law of said Anthony Woodward, deceased, who died intestate; and since the death of said Anthony Woodward the property has been continued to be held adversely to said complainant.

They admit that request and demand was made of them by complainant to yield up possession, in this way: an ejectment was commenced by the complainant in the Monmouth Circuit Court, to recover possession of said premises; and this defendant Caroline Woodward was admitted to defend the same; and such proceedings were had in said action that, in the term of May, 1847, of said Court. before his Honor, James S. Nevius and a Jury, the same was brought to trial and duly tried; and on said trial the said deed was produced in evidence on the part of the plaintiff; and the defendant in said suit, Caroline Woodward, resisted said deed as having never been delivered by said Anthony Woodward, and as having been fraudulently obtained by complainant, and the said defendant in that suit then gave in evidence proof of the title of her said deceased husband, the marriage, his seizure and death, his possession during the marriage, and of the heirs-at-law of said deceased; and further insisted that, if it had been proved that said deed had been duly

and legally delivered at the time it bore date, and just on the eve of the marriage of the said Caroline, she being ignorant of it, it woulds till be a fraud and void as to her, and she, as widow, by virtue of her right of dower, would be entitled to the possession of said homestead farm and mansion house.   And his Honor Judge Nevius charged that, although actual possession of a deed by the grantee named in it is presumptive evidence of delivery, yet, in the case then on trial, it being proved that the deed was found in the desk of the grantor after his death, and that the grantee had on his own mere motion taken possession of it, it became necessary for the plaintiff to show that Anthony Woodward had delivered it in his lifetime ; that when it was executed the plaintiff (complainant here) was not present, and that there was no delivery then, as the signing and sealing a deed written by the grantor and with the words, in the attestation, "signed, sealed and delivered" also written by the grantor, constitute no legal evidence of a delivery ; that the showing or reading a deed, even, by the grantor and retaining it in his hands was no delivery ; and that the declarations of the complainant made when the deed was found should be taken as evidence with great caution ; yet, taking them as made, the intention or promise of the grandfather to give his grandson this farm would not amount to a gift; and that the jury, in order to sustain the plaintiff's title, must find that there was such a delivery of said deed, before the defendant's marriage, as divested Anthony Woodward of all his legal right in the farm, and vested the legal title in the plaintiff, absolute and complete, before the marriage, so that the plaintiff could, by virtue of said deed, have ejected his grandfather from the farm ; and that the plaintiff's present (then) possession of the deed, explained as it had been, constituted no presumption of a delivery.   And the jury in said action rendered a verdict against the plaintiff, and in favor of the defendant, Caroline Woodward ; it being, the bill says, against the validity of the said deed, and in favor of the the title of the said widow and the heirs-at-law of said Anthony Woodward deceased ; and final judgment was entered accordingly in said action.

The defendants deny that said Anthony Woodward, deceased, up to and within a few years of his death, acknowledged the ex-

istence and validity of said deed, or the existence of any settlement, but, on the contrary, charge that said Anthony Woodward, in his lifetime, would often and did often speak of the interest and right that these defendants, his children, would have to and in said farm when he should be done with it.

These defendants have no knowledge of any branches of the family that knew of the existence of said deed, or of what Joseph and Lydia Bullock did as pretended in said bill, or of what representations were made to them, or of what they knew or pretended to know, or on what grounds they acted, or how they acted, touching the matters pretended in said bill.

They deny that said Anthony Woodward expended large sums of money in the support and maintenance of the poor relatives of said Caroline Woodward, or on any of her relatives, or any money except so far as he supported the children, these defendants; and they deny that any of her family were in destitute circumstances, or ever became a charge on said Anthony Woodward.

They admit that Anthony Woodward died seized and possessed of some other real estate, and also of personal estate, as stated in the bill; but they deny that the same descended to the children of said Anthony Woodward and say that the said real estate was only some small tracts, mostly pine lands; and the whole of said personal property was long since applied, in due course of administration, to the payment of debts of said Anthony Woodward deceased; and that the Orphans' Court of said county have also directed the administrators of said estate to sell, and they have sold, all the real estate of which said Anthony Woodward died seized, except said farm and plantation, that these defendants know any thing about; said sale being for the payment of debts; and still the whole of the debts were not paid; and, to pay the balance of said debts, the Orphan's Court have by their decree ordered a part of said homestead farm to be sold by the administrators.

They admit they have the title deeds, They say that the deed set up by complainant, having never been delivered, cannot be said to be and was not ever by him fully executed; and they deny that the witnesses to said deed knew what it was, or that said Anthony Woodward told them what it was.

They submit that the statements and allegations in the bill do not entitle the complainant to any consideration in this Court; and they deny that the complainant is without remedy except in this Court, and aver that there was no impediment to his pursuing the remedy resorted to by him in ejectment; and they insist that in such remedy at law, alone, can the complainant be per-permitted &c.; and the defendants submit that, the complainant having left the matter to the ordinary and appropriate and in this case the only suitable tribunal for the final hearing and determination of the matters now involved, and the same having been decided adversely to him, and judgment entered accordingly, is, in equity and good conscience, and by the rules and practice of this Court, debarred from recovering in this Court.

And the defendants who are infants submit their rights and interests to the protection of the Court.

A replication was put in.

Afterwards, on the first of March, 1848, a supplemental bill was filed, stating that Nimrod Woodward and Wesley Wilbur had obtained letters of administration of the estate of said Anthony Woodward, deceased, and had obtained an order of the Orphan's Court to sell thirty acres of the said homestead farm for the payment of the debts of said Anthony Woodward, deceased, and praying an injunction against the sale, &c.

The injunction was granted.

The answer of the administrators admits the order for sale, &c. They also state that, on the occasion of the discovery of the deed in the desk, after Anthony Woodward's death, some one asked the complainant if the deed had ever been delivered, and that he said it had not been delivered, that his grandfather was going to give it to him.

Testimony was taken on both sides, but there was no evidence of any delivery of the deed, or of the payment of any part of the

money consideration mentioned therein, in addition to that of love and affection.

*W. L. Dayton* and *W. Halsted* for the complainant. They cited 1 *Bibb,* 333; 7 *Halsted's Rep.* 110; 4 *Kent's Com.* 445, 455; 4 *Halsted's Rep.* 156; 6 *Gill & John.* 256; 5 *Wend.* 546; *Woodb. & Minot,* 330; 12 *John.* 552; 20 *Pick.* 28; 4 *Day,* 66; *Cro. El.* 7; 17 *John.* 7; 6 *Conn. Rep.* 11; *Dev. Eq.* 15; 1 *Greenl. Ev.* 220; 34 *Eng. C. L. Rep.* 322; 9 *Smede & Marsh,* 387; 12 *Eng. C. L. Rep.* 351, 9; 10 *Ves. J.* 470; 3 *Mason's Rep.* 378; 2 *Wend.* 317; 11 *Eng. C. L. Rep.* 439; 3 *Green's Ch.* 485; *Jerem. Eq.* 91; 1 *John. Ch.* 240; 2 *Vern.* 473; 1 *Atk.* 625; 6 *Simons,* 31; 1 *John. Ch.* 450; 1 *Ves. Sen.* 314; 3 *Swanst.* 414; 3 *Meriv.* 256, 270; 25 *Law Lib.* 167; 2 *P. W.* 674; 1 *Vern.* 408; 1 *John. Ch.* 271; 22 *Pick.* 376; 6 *Paige,* 65, 535; 1 *John. Ca.* 97; *Willes Rep.* 682; 1 *Story's Eq.,* sec. 513, 254, 455, 6; 2 *Ib.* sec. 1485; *Penn. Rep.* 500; 1 *Stuart,* 136; 1 *N. Hamp. Rep.* 358; 1 *Barb. Rep.* 610.

*P. Vredenburgh* for the defendants. He cited 5 *John. Ch.* 489; 3 *Phil. Ev.* 1285; 1 *Smith's Ch. Pr.* 3, and note.

THE CHANCELLOR. The complainant will be left to his remedy at law. The question involved is the delivery or not of the deed, a question proper to be determined in a court of law.

Bill dismissed.